[No. 2,701.]

# THE PEOPLE OF THE STATE OF CALIFORNIA, EX REL. ALEXANDER W. MACPHERSON, *v.* THE BOARD OF SUPERVISORS OF THE CITY AND COUNTY OF SAN FRANCISCO.

EFFECT OF DECISION IN THE "MATTER OF BEALE STREET, 39 CAL. 495."—The directions given by the Supreme Court, in its decision on appeal from the County Court of San Francisco in The Matter of Beale Street, 39 Cal. 495, were but the announcement of results to be ultimately reached, and had no reference to the mere procedure to be pursued in the County Court for that purpose; and they did not authorize that Court to itself modify the report of the Commissioners and enter final judgment thereon.

CHANGING GRADE OF STREETS IN SAN FRANCISCO—FINAL JUDGMENT MUST CONFORM TO FINAL REPORT.—Under the statute of March 28th, 1868, authorizing the Supervisors of San Francisco to modify or change the grade of streets (Stats. 1867-8, p. 463), the final judgment to be rendered by the County Court must be one rendered in conformity with the report of the Commissioners on file; and when it is ascertained that there are errors in the report they must first be eradicated from it before the Court can proceed to final judgment; nor can any report become the basis of final judgment except it shall first have received the approval and sanction of the Supervisors.

CONTROL BY SAN FRANCISCO SUPERVISORS OVER PROCEEDINGS TO CHANGE GRADE OF STREETS.—As, under the statute of March 28th, 1868, for the change of grade of streets in San Francisco (Stats. 1867-8, p. 463), the County Court, before it is authorized to hear objections to the proceedings, must be notified "that the Board of Supervisors have confirmed the report" of the Commissioners; and as, if they reject it, it must fail, and without their approval the proceedings must halt, it follows that the Supervisors have an unqualified veto power over the proceedings in this respect—the proceedings being in reality their own and none the less so because carried on through the instrumentality of the County Court.

REPORT OF COMMISSIONERS CHANGING STREET GRADE IN SAN FRANCISCO TO BE APPROVED IN ALL ITS PARTS BY SUPERVISORS.—Under the statute for the change of grade of streets in San Francisco (Stats. 1867-8, p. 463), the report of the Commissioners, upon which the judgment of the County Court is to be rendered, as therein provided, must be one which as a whole and in all its parts and details, and, if modified, with all its modifications, has received the approval and confirmation of the Board of Supervisors.

THIS was an application for the writ of mandate to the Supreme Court.

The facts are stated in the opinion.

*Jo Hamilton, Attorney General,* and *McAllisters & Bergin,* for Relator.

The action of the Board of Supervisors was conclusive, unless set aside by the County Court, where alone exclusively resided the power to correct or revise it. The entire procedure for the change of grade of streets in San Francisco is of purely statute creation, and, therefore, the mode of correcting any errors that may intervene is confined exclusively to that allowed by the statute. This is provided by the statute to be by application to the County Court.

The Act (section two) provides that "the County Court shall take jurisdiction of the proceedings;" and, having such jurisdiction, its action is final and conclusive upon the legality and validity of the proceedings. Jurisdiction is a term of well known and defined legal import; it is the power to hear and determine in a cause or proceeding. (*Ex Parte Watkins,* 3 Pet. 200; *Grignon* v. *Astor,* 2 How. 338; *Brewster* v. *Judkins,* 19 Cal. 171.) As was said in *Peck* v. *Jenness,* 7 How. 624: "It is a doctrine of law, too long established to require citation of authorities, that where a Court has jurisdiction it has the right to decide every question that occurs in the cause; and, whether its decision be correct or otherwise, its judgment till reversed is regarded as binding in every Court." (See, also, *Semple* v. *Hagar,* 27 Cal. 169.)

The Act further provides that if the Supervisors confirm the report, the grades of the streets shall be changed as contemplated. The action of the Supervisors has been done, and its action has been affirmed, not only by the County Court, but by the judgment of this Court. In any and every view then that may be taken of these proceedings, they are legal and valid and effectual to operate the change of grades prayed for.

Mandamus will lie and is the proper remedy. The relator

has a vested right under the judgment awarding him damages, of the benefit of which he cannot be deprived by the Board of Supervisors. In proceedings of this kind, though the Board has a discretion to institute or prosecute them or not, before rights have vested, yet once they have so far progressed that rights have vested under them, they cease any longer to have any discretion in the premises, and may be compelled by mandamus to proceed if they fail to do so. (*People* v. *Corporation of Brooklyn*, 1 Wend. 322; *In the Matter of Beekman Street*, 20 Johns. 268; *Safford* v. *Mayor of Albany*, 7 Johns. 545; *Hawkins* v. *Trustees of Rochester*, 1 Wend. 54; *Ganson* v. *City of Buffalo*, 1 Keyes, N. Y. 454; *McCullough* v. *City of Brooklyn*, 23 Wend. 458; *People* v. *Common Council of Syracuse*, 20 How Pr. 491; *State* v. *City of Keokuk*, 9 Iowa, 442.)

*William Irvine*, also for Relator.

The Board of Supervisors had jurisdiction of the subject matter. (*Smith* v. *Corporation of Washington*, 20 How. 135.) In passing upon the petition, and ordering the change of grade, it acted in a judicial character, and its adjudication was conclusive upon all parties affected by the change, unless objected to at the time and in the manner specified in the Act, as by the express provisions of the Act all errors, omissions, and irregularities in any of the proceedings are declared to be waived, unless the particular errors, omissions, or irregularities be objected to and specified. (*Kavanagh* v. *City of Brooklyn*, 38 Barb. 237.)

There having been no objections made in the County Court, as provided in the Act, the judgment became conclusive of the entire subject matter, as well upon those to whom damages were awarded as upon those assessed for benefits. And all errors, omissions, and irregularities, if any, were tolled by the final judgment of confirmation. After such confirmation the city had no authority to dis-

continue the proceedings. Upon such confirmation rights become vested; and the city is bound to go on with the proceeding, and will be compelled to do so by mandamus on the application of any person interested in the proposed improvement. (*People ex rel. Green* v. *Common Council of Syracuse*, 20 How. Pr. 491.)

*S. M. Wilson*, *R. C. Harrison*, and *W. C. Burnett*, for Respondent.

The writ of mandate is never issued to control the discretion of a deliberative body. In the case presented the Board of Supervisors has a discretionary power intrusted to it in determining whether it will order the work asked for. (*Eustace* v. *Jahns*, 38 Cal.)

The relator proceeds upon the ground that the proceedings for the change of grade have ended, and have resulted in an actual change of grade, and that now the Board of Supervisors must begin and carry out the actual work of reducing the present plane of the street to that official grade. But it will be observed that the mandamus asked for is not to compel the Board to go on and establish a grade, but to compel the actual work of grading to an established grade. As a matter of fact, the proceedings to do the work have not been commenced by the Board. It refuses to declare its intention to do the work. It refuses to take the very first step. How utterly inapplicable, then, are authorities, that after a Board has proceeded to a certain degree of progress in a public work, and until great public and private interests are affected, they must go on to completion, and may be compelled by mandamus?

The relator has no vested right, and he himself concedes that he has none, unless the report of the Commissioners has been finally confirmed; and we shall show that it has not been confirmed. But it is plain that he could not be damaged until the work is done, nor can any assessments

for paying damages be enforced until the necessity for making payments arrives. The only right, then, that the relator can claim to be " vested " is the right to be damaged; and we know of no principle which guarantees such a right to any citizen. Again, the Board of Supervisors are not attempting to deprive the relator of any " right." They have done nothing to impair his right to receive those damages whenever they shall have been suffered. His judgment therefor is forever good; and whenever he shall suffer any damage from the change of grade, the means of enforcing that judgment will be ample and unimpaired.

But the Board never acquired any jurisdiction, and the grades have never been changed. There was not a sufficient representation of the property in the original petition; and the defeat there is not aided by any subsequent proceedings in the County Court. The Act does not say that the County Court shall " have " jurisdiction over the parties or property to be affected. Such a declaration would have no force. A Court cannot, of its own motion, " have " jurisdiction of the person or the subject in controversy. It may " acquire " jurisdiction by following the steps prescribed by law; but the Legislature cannot, by its act, confer jurisdiction upon a Court over a person. It can only authorize the Court to obtain jurisdiction. This is the full extent of its powers; and unless jurisdiction is " obtained " in the first place the acts of the Court are *coram non judice* and void. The provision of the statute under discussion is, that " the County Court shall ' take ' jurisdiction of the proceedings," *i. e.*, it shall have just the jurisdiction which the Supervisors had. It does not acquire any additional jurisdiction, but simply " takes " the matter in hand, and proceeds to a certain step, when it surrenders the jurisdiction again to the Board of Supervisors, who finally determine whether the grade shall be changed. The powers of the County Court are merely ancillary to the Board of Supervisors, and given to it to

enable the moneys to be raised to be collected by means of the machinery with which Courts are provided, and which the Supervisors have not at their command.

The Board never confirmed the report of the Commissioners. After the report had been filed the County Court fixed a day for hearing objections, and, after argument, confirmed the report; but this confirmation of the Court was an entirely distinct thing from the confirmation by the Supervisors, required by the statute. The one was a judicial confirmation of the legality of the report, while the other would have been an adoption of the report thus confirmed by the Court. An appeal was taken from that confirmation by the Court; and this Court reversed the confirmation by the County Court, and remanded the case, with directions to the Court below " to take such further proceedings to carry out the decision of this Court, not inconsistent with the opinion herein, as may be necessary." But the Court below did not cause the report to be amended, and did not cause any notice of any modification or change in the report to be given to the Board of Supervisors. Instead of doing so, the County Court took upon itself the office of performing the functions of the Commissioners, and attempted to enter a judgment in conformity with what the revised report should have been, but without having the report revised. It did not conduct the subsequent proceedings in conformity with the provisions of the statute. In so doing the Court neglected the very step which was essential to the change of the grade. It follows that neither the mandate of this Court -nor the provisions of the statute, as to " the subsequent proceedings," have been followed. There has been a defect in the proceedings, which has prevented their consummation; there has been no confirmation of the report; there has been no change of grade.

By the Court, WALLACE, C. J.:

This is an application for a peremptory writ of mandamus requiring the Board " to pass the necessary and proper resolutions and orders, and give the notices required by law, to grade Beale street from Folsom street to Bryant street, and Harrison street from Fremont street to Main street, to the newly established grade of said Beale street and Harrison street, between said Folsom street and Bryant street, and said Fremont street and Main street, and to proceed and execute the prayer of the petition of the property owners praying for the grading of said streets,   *   *   *   presented   *   *   *   October 24th, 1870."

It appears that in January, 1869, a petition signed by certain persons, owners of lots in San Francisco, was presented to the Board of Supervisors, praying that a change in the grade of Beale street from Folsom street to Bryant street, and also a corresponding change in the grade of Harrison street, an intersecting street, be ordered by the Board. The petition was presented under the provisions of the Act of March 28th, 1868, p. 463, authorizing the Board to modify and change the grade of streets in San Francisco, and it purported to be signed by the owners of three fourths of the property to be affected by the proposed change. In response to this petition, the Board, on the 23d day of February following, adopted a resolution reciting the substance of the petition presented, declaring their intention to accede to its prayer, designating certain limits within which the lots of land would be benefited by the proposed change, and directing that the resolution be published for the period of thirty days in the official newspaper as a notice of such intention, under Section 2 of the statute. The publication was had accordingly—the first publication being made upon the 26th

CAL. REPS. XLIII—13

day of February, 1869—and within twenty days after such first publication, some nine persons, owners of lots of land, filed their several duly verified petitions under subdivision two of Section 2 of the statute, setting forth the damages which they claimed they would respectively sustain by the proposed change of grade, and asking the appointment of Commissioners to assess such damages, etc.; of the filing of which petitions the County Clerk gave immediate notice to the President of the Board. The County Court thereupon proceeded to appoint three proper persons to be Commissioners to assess the benefits and damages growing out of the proposed change of grade. This was on the 16th of April, 1869, and on the 4th of October following the Commissioners filed their report, in which they awarded damages not only to the nine persons who had so petitioned therefor, but to divers other persons, owners of lots, who had filed no petitions in that behalf. One of the nine persons who had duly filed petitions claiming damages was the present petitioner, A. W. McPherson, and there was awarded to him by the Commissioners in their report some thirty-three thousand dollars as damages which he would sustain by the change of grade proposed. On the filing of this report the County Clerk notified the Board of Supervisors of the fact that it had been so filed, and the Board thereafter, on the 11th of October, 1869, by its ordinance, duly passed for that purpose, confirmed the report, of the fact of which confirmation the Clerk of the Board in turn gave notice to the County Court, and the County Court thereupon by its order fixed the 1st day of November, 1869, as the day for hearing parties feeling aggrieved by reason of the proceedings.

On that day the "Union Lumber Association," who, as owners of certain premises, had been assessed by the report in some sixty-five thousand dollars for supposed benefits to their property by the proposed change of grade, made objections to the report upon several grounds; among others, upon

the ground that damages had been allowed to non-petition-
ing owners; that the damages as awarded were exorbitant
in amount, and that the assessment imposed upon the prop-
erty of the association for supposed benefits was excessive,
etc.    These objections coming on to be heard before the
County Court, on the 17th of February, 1870, that Court
held that the report of the Commissioners was correct in
undertaking to award damages to non-petitioning owners,
and that the Court had no authority to hear evidence or
entertain an inquiry as to alleged errors committed in the
estimates made by the Commissioners respecting benefits to
be received or damages to be sustained, but that the esti-
mates contained in the confirmed report, in the absence of
fraud, were conclusive, and all objections being overruled,
judgment was thereupon rendered against the several lots of
land in accordance with the report on file.

From this judgment of the County Court the Union Lum-
ber Association brought an appeal here, and this Court con-
sidering that, in so far as an award of damages had been
made in favor of non-petitioning lot owners error had inter-
vened, thereupon delivered its opinion to that effect and
reversed the judgment and remanded the cause "with direc-
tions to render judgment, omitting the damages awarded to
parties not filing petitions therefor as required by the statute,
and for such further proceedings as may be necessary and
not inconsistent with this opinion."    (*In The Matter of Beale
Street,* 39 Cal. 495.)

At a subsequent day, the remittitur not having issued, the
counsel upon either side of that cause presented to this Court
a stipulation to the effect that the judgment theretofore
entered in the above entitled cause should be changed and
modified so as to read as follows: "The judgment of the
County Court is reversed and the cause remanded with direc-
tions to render judgment in favor of the nine persons who
filed petitions for damages, omitting the damages awarded

to parties not filing petitions therefor as required by the statute, and to deduct from the several assessments for benefits their respective proportionate part of the sum of two hundred and fifteen thousand and eighty dollars and fifty-seven cents, that had been awarded to persons not filing petitions for damages, and to apportion the amount of the several awards of said nine persons, together with the expenses of these proceedings, upon the lands and premises assessed for benefits, as reported by the Commissioners, and take such further proceedings to carry out the decision of this Court, not inconsistent with the opinion herein as may be necessary," and the order of modification was accordingly entered here.

The cause having been remanded to the County Court, that Court, on the 29th day of August, 1870, entered an order reciting the several steps which had been theretofore taken, including the proceedings had in this Court upon appeal, and thereupon, without setting aside or recommitting the report of the Commissioners, or correcting the report itself in any wise, the County Court rendered a judgment by which it awarded damages to the nine petitioning owners only, and by its judgment reduced the assessment for benefits in a like proportion, and upon the basis which had been here indicated as correct. The amount awarded by this judgment to McPherson, the petitioner here, as damages, was not reduced below the amount the Commissioners had reported in his favor, and upon the entry of judgment in the County Court he applied for an order of sale to enforce the collection of the sum so awarded to him, but the County Court denied the application on the ground that no such process could be lawfully issued until the work of actually grading said streets had been done and the fact of its completion ascertained by the Court. The petitioner, McPherson, thereupon presented to the Board of Supervisors a written petition, subscribed by himself and other owners of property fronting

on the work proposed to be done, in which petition they prayed the Board to cause the work of grading of these streets to be done, in accordance with the resolution and notice of February 23d, 1869, and the Board refusing to accede to the petition, he now makes application for the writ of mandamus to compel them to do so.

The judgment of this Court, reversing that of the County Court, and remanding the cause, with directions, placed the cause, upon its return to the County Court, in the same situation as to the further proceedings to be had thereafter, as though that Court had itself finally sustained the objection of the Union Lumber Association in respect to the award of damages to non-petitioning lot owners. Had that Court itself sustained the objection made in that behalf, it must have resulted that any judgment thereafter to be rendered by it must have been one confining the award of damages to the nine petitioning owners, and reducing, of course, the assessment for benefits in a relative proportion.

The directions given here, that judgment should be rendered in favor of certain persons, and that a reduction of damages awarded, as well as of benefits assessed, should be made, were but the announcements of results to be ultimately reached, and had no reference, of course, to the mere procedure to be pursued in the County Court for that purpose. The mandate of this Court directed that Court to take such further proceedings as might be necessary to carry into effect the decision rendered here. That Court was thus thrown back upon the statute to ascertain for itself what proceedings were necessary to be pursued for that purpose, for no question upon that subject had been made, or considered, or decided here. And it is clear that had the objection of the association as to the allowance of damages to the non-petitioners been sustained in the County Court, without the resort to an appeal to this Court, the Commissioners must have been directed to modify their report, and

to reduce the amounts therein set forth for damages to be sustained, and for benefits to be received as well. That objection being sustained in the County Court in the first instance, or here on appeal in the second, it unavoidably resulted that an excess of damages awarded, aggregating more than two hundred thousand dollars in amount, would appear upon the face of the report itself. As, under the statute, the judgment to be rendered must be one rendered in conformity with the report on file, it is obvious that the ascertained errors of the report itself should be first eradicated before proceeding to final judgment thereon. The means to be availed of by the County Court for the correction of a report, ascertained to have been made upon an erroneous basis of law or fact, are not pointed out in the statute, nor is it important that they should be so pointed out. An order directing the particulars in which, or enunciating the principles upon which, a modification should be made is all that would be necessary in that respect. This is mere practice, and the particular procedure adopted, whatever it be, nothing more than form. But the duty to direct the modification of the report in some form is clear, and had it been observed in this instance another duty, and one which is important in its consequences, must have thereupon arisen—*the duty of resubmitting the modified report for the confirmation or rejection of the Board of Supervisors.* There can be no doubt that the intent of the statute is, that no report shall become the basis of the judgment of the County Court, in proceedings to change the grade of streets, except such report shall itself have first received the approval and confirmation of the Board. Unless this be the correct interpretation of the statute, the provisions of the ninth subdivision of the second section amount to a mere delusion and a snare. It is there enacted, that before the County Court shall be authorized to hear any objection to the proceedings by persons aggrieved, it must have been

notified "*that the Board have confirmed the report.*"        Of
course if the Board *reject* it, it *must* fail—the Board has
thus an unqualified veto power over the proceedings in this
respect, for these proceedings are in reality their own, and
not the less so because carried on through the instrumen-
tality of the County Court.  When the report upon which
judgment is to be rendered is filed there, the Board must
have notice of the fact.  The report is first for them to con-
sider.  They are to determine whether, in view of what is
now developed, the proposed change is still advisable;
whether the results anticipated at the passage of the reso-
lution, in the first instance, appear to have been attained, or
to be indeed attainable; to inquire what proportion the
aggregate damages to be suffered bear to the aggregate
benefits to be accomplished; whether a reasonable measure
of substantial justice among the property holders affected
has been observed by the Commissioners; in fine, the pro-
jected measure is, so far as the public is concerned, now
brought up before the Board for definitive disposal, by the
light of all the reasons which influence public bodies in the
discharge of public duties involving high considerations of
policy and justice.

This approval of the Board, accorded to the report, con-
stitutes the warrant and the authority of the Court to pro-
ceed further.  Without that approval the proceedings must
halt.  The *approved report* is indispensable to the taking of
further steps in the business.  A mere report filed, one
which has not been sanctioned by the Board, as affording
the requisite authority to proceed, is as worthless as though
the signatures of all the Commissioners had been omitted
upon its face.

And though a report be filed, and even if, upon considera-
tion, it be approved by the ordinance of the Board, yet if
through any agency, or by any means subsequently occur-
ring, in the judicial proceedings to follow, the report itself

be modified in a material point, has it not thereby ceased to be the report approved by the Board? Or is it to be said that the approval of the original report filed in the case is to be applied by operation of law to any modified or substituted report by which the original report may be thereafter supplanted or superseded?

We think that these questions can be answered in but one way, and that is that *the report upon which the judgment of the County Court is to be rendered must be one which, as a whole and in all its parts and details, has received the approval and confirmation of the Board.*

But the judgment of the County Court of August 29th, 1870, was not a judgment in accordance with the report on file, which had received the approval of the Board—that report, as we have said, must have been first amended before the judgment directed by the mandate of this Court could be properly entered—the amendment of the report, in the respects indicated here, was one of *the further proceedings* directed by the judgment of this Court, and then, if the Board had by ordinance approved the report as so amended, and its approval had been notified to the County Court, the judgment of that Court might have been appropriately rendered thereon. Had the report, as thus amended, been resubmitted to the Board, new considerations of a grave character must have unavoidably been thereby presented for determination.

It would then have appeared, for the first time to the Board, by the amended report, that only nine persons were to receive their damages occasioned by the proposed change; that a large number of persons, having claims probably equally as meritorious as those nine, were about to lose them by reason of a mere misapprehension upon their part of the terms of the statute requiring them to present their petitions therefor; that the omission of these claims, amounting, as we have seen, to upwards of two hundred thousand

Points decided.

dollars, would be a great hardship upon the claimants, from which the Board alone had the power and the discretion to relieve them, by withholding its approval from the amended report, and thus, by forcing proceedings *de novo*, have promoted substantial justice in that respect. But whatever view the Board might have entertained upon this, or any other matter appearing upon the proceedings at that point, the statute contemplated that the amended report should pass the ordeal of their judgment, and receive an approval or rejection at their hands, as the case might be, before it could become the subject of further action in the Courts.

The petition and exhibits, constituting the record upon this application for the writ of mandamus, failing, as they do, to show that final proceedings have yet been had in the County Court, pursuant to the mandate of this Court, it results that there was no absolute duty upon the part of the Board to accede to the petition of the applicant, demanding that it begin the work of grading the streets referred to.

The application for the writ must, therefore, be denied; and it is so ordered.